Argued and submitted March 14, affirmed October 10, 1984

In the Matter of the Compensation of
Alfred M. Norbeck, Claimant.

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Petitioner,*

*v.*

NORBECK,
*Respondent - Cross-Respondent,*
CENTRAL MANUFACTURING CO.,
*Respondent - Cross-Petitioner.*

(81-06775, 82-05186, 82-06053; CA A28741)

689 P2d 339

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for petitioner. On the brief was Donna Parton Garaventa, Associate Appellate Counsel, State Accident Insurance Fund Corporation, Salem.

W. D. Bates, Jr., Eugene, argued the cause and filed the briefs for respondent - cross-respondent.

Scott H. Terrall, Portland, argued the cause for respondent - cross-petitioner. On the brief were Bruce L. Byerly, Daniel L. Meyers, and Moscato & Meyers, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

SAIF appeals from an order of the Workers' Compensation Board. It contends that the Board erred in affirming the referee's order that the back condition for which claimant received treatment in 1981 is compensable and that SAIF is responsible, in affirming the referee's award of interim compensation, and in awarding a penalty and attorney fees for unreasonable failure to pay temporary total disability when due. Central Manufacturing Co. had previously accepted claimant's 1979 back claim during a time when EBI was Central's insurer. It cross-appeals, contending that the Board erred in affirming the referee's award of unscheduled permanent disability for claimant's back disability resulting from his 1979 compensable injury.

■   On *de novo* review, ORS 656.298(6), we conclude that the weight of the medical evidence demonstrates that claimant's back problem has been worsened by his work activities while SAIF was on the risk, that his condition is compensable as an occupational disease, and that SAIF is responsible.

■   SAIF contends that the Board erred in affirming the referee's award of interim compensation from March 23 to June 28, 1982. It argues that claimant was off work during that period for reasons unrelated to his physical condition and that, therefore, he is not entitled to an award.

The Board found in relevant part:

> "Claimant filed his * * * claim directly with SAIF in March 1982. This filing constituted the notice or knowledge contemplated by ORS 656.262(4). SAIF had an obligation either to commence payment of interim compensation within 14 days of its receipt of this claim form, which was March 23, 1982, or deny the claim. The fact that claimant apparently was retired at the time the claim was filed does not excuse SAIF's failure to comply with this duty. * * * SAIF, therefore, is required to pay claimant interim compensation from March 23, 1982 until the date of the denial issued in behalf of Central Manufacturing Corporation, June 28, 1982, in accordance with the terms of the Referee's order. * * *"

We agree. *See Bono v. SAIF,* 66 Or App 138, 673 P2d 558 (1983), *rev allowed* 296 Or 829, 679 P2d 1366 (1984); *Stone v. SAIF,* 57 Or App 808, 646 P2d 668, *petitions for review dismissed as improvidently granted,* 294 Or 442, 656 P2d 940

(1983); *Likens v. SAIF,* 56 Or App 498, 642 P2d 342 (1982).

■    As SAIF's contention that the Board erred in affirming the referee's award of a penalty and attorney fees for failure to pay interim compensation when due, SAIF argues only that that was error because no compensation was due. We have already held that compensation was due and, therefore, we reject SAIF's contention.

■    On cross-appeal, the employer requests that we modify the Board's order that affirmed the referee's award of 15 percent permanent partial disability[1] for the 1979 injury,

---

[1] The referee stated:

"Since the 1979 EBI claim is not to be reopened for a worsened condition, it is appropriate to consider the permanent-disability issue on that claim. The claimant has contested the failure of the September 1980 Determination Order to grant a permanent disability award. That failure is puzzling, since Dr. Degge's uncontroverted, July-1980, closing report indicated that the claimant had a residual permanent functional impairment. In evaluating the permanent disability on the 1979 claim now, of course, it is necessary to look back to the claimant's condition in September 1980, when the claim was closed — since the subsequent worsening and increased impairment is SAIF's responsibility.

"The claimant testified about his condition in September 1980. From that testimony I find that he was then having some low-back and right leg problems. With respect to his right leg, his thigh bothered him the most, and he had some shooting pains into the toes of his right foot. However, he was not bothered by the low-back pain, which varied with his activity. It did not take much bending, twisting or walking at work to make him feel worse. He slowed down in his ability to do his regular job, but was able to continue with it because the declining economy reduced the number of lumber orders that the claimant had to handle.

"Back disability is an unscheduled disability, which is evaluated in terms of permanent loss of earning capacity. Such an evaluation requires consideration of medical factors, such as the residual physical impairment, in the light of non-medical factors, such as the claimant's age, education, work experience, adaptability to suitable employment and the availability of such employment — without regard to business booms or recessions. The basic question in evaluating unscheduled disability is the extent of the claimant's residual ability to obtain and perform regular, gainful, suitable employment, considering the broad range of occupations.

"The claimant had permanent impairment when the 1979 claim was closed. It was 'in the lower level of mild.' The claimant's testimony establishes that he had also been left with a loss of reserve capacity. While much of his pain would be categorized as non-disabling, which is not compensable, his ability to continue with his regular job was only because its physical demands somewhat lessened. I am persuaded that his 1979 injury foreclosed him from repetitive heavy work. No doubt some sawmill and lumber yard jobs that he did in the past were foreclosed by the 1979 injury.

"There was in this proceeding, however, little evidence on the specifics of his prior work experience. Also, he has not been seeking re-employment since he left

because it is excessive. We do not find it excessive.

Affirmed on appeal and on cross-appeal.

---

Pitchford. He appears to have chosen retirement, on the assumption that employment would not be available to a 61-year-old man with a bad back. Yet, he has some demonstrated supervisory experience. The problem is that his self-chosen retirement, although it may have been stimulated by his later, worsened condition, has left this record barren of possible evidence of unsuccessful efforts to obtain employment.

"A retroactive evaluation of permanent disability is always difficult. However, considering the evidence in this record, the applicable law and rules, and the appropriate factors for evaluating unscheduled disability, I conclude that the claimant should be awarded, for the permanent loss of earning capacity resulting from his 1979 'injury', 15 percent of the statutory maximum for unscheduled permanent partial disability."

The Board affirmed that portion of the referee's order without comment.